IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DOUGLAS WHISNANT,<br>BOP Reg. #31751-074<br><br>    Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | CIVIL ACTION FILE<br>NO. 1:20-CV-04818-MLB-JEM |

**UNITED STATES MAGISTRATE JUDGE'S ORDER
AND FINAL REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner's 28 U.S.C. § 2241 motion, challenging the execution and calculation of his federal sentence, (Doc. 1), and Petitioner's motion seeking an evidentiary hearing, (Doc. 36). For the below reasons, the Court **DENIES** Petitioner's motion for an evidentiary hearing, (Doc. 36), and the Court **RECOMMENDS** that Petitioner's § 2241 motion, (Doc. 1), be **DENIED**.

**I.    BACKGROUND**

The records provided by both parties, and the relevant public documents, show the following timeline of events:

| 07-18-2005 | Petitioner pled guilty in the Criminal Circuit Court of Scott County, Tennessee, to being a felon in possession of prohibited weapons in case no. 8338, and he was sentenced to four years of probation, (Docs. 9-2 at 1-14; 9-3 at 1-3); |
|---|---|

| 03-08-2007 | Petitioner was arrested in Tennessee by the Scott County Sheriff's Department (SCSD), booked on a charge of criminal trespass in case no. 30007, and given an initial appearance date of 03-12-2007, which was continued to 03-14-2007, (Docs. 9-1 at 3, 14; 9-5 at 1, 3-4; 9-6 at 1); |
|---|---|
| 03-09-2007 | A warrant to search Petitioner's property was issued by a Tennessee state court judge in connection with the investigation of the disappearance of Jean Johnson, Petitioner's former spouse, and upon executing the warrant, law enforcement located multiple firearms, ammunition, and bomb-making materials, (Docs. 9-4; 9-8 at 1-3; 9-14); |
| 03-13-2007 | A criminal complaint against Petitioner was filed in the Eastern District of Tennessee (EDTN) for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), (EDTN 3:07-CR-32, Doc. 1; *see also* Doc. 9-4); |
| 03-14-2007 | At the initial appearance for Petitioner's criminal trespass charge—case no. 30007—secure bond was set at $250,000, (Docs. 9-5 at 1, 4; 9-6 at 1); |
| 03-21-2007 | An indictment was returned in EDTN, charging Petitioner with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and a hold with SCSD was placed by the U.S. Department of Justice ATF (EDTN 3:07-CR-32, Doc. 2; *see also* Docs. 9-1 at 14; 9-6 at 1; 9-9); |
| 03-21-2007 | Petitioner's SCSD criminal trespass charge—case no. 30007—was dismissed without prejudice on the state's motion due to Petitioner having been indicted on federal charges, (Docs. 9-1 at 3 n.1; 9-5 at 2); |
| 03-26-2007 | Petitioner, still in SCSD custody, was booked for violating his probation in case no. 8338, (Docs. 9-1 at 3, 14; 9-2; 9-3; 9-6 at 1); |
| 03-26-2007 | A writ of habeas corpus *ad prosequendum* was issued to the Scott County Sheriff, for Petitioner's initial appearance in EDTN on 04-09-2007, (EDTN 3:07-CR-32, Doc. 4; *see also* Docs. 9-11; 9-12); |
| 04-05-2007 | At the Scott County Jail, a Deputy U.S. Marshal executed the warrant for Petitioner's arrest on the EDTN charge, (EDTN 3:07-CR-32, Doc. 12), and Petitioner was released to the custody of the U.S. Marshal pursuant to the writ of habeas corpus *ad prosequendum*, (Doc. 9-1 at 3, 14, 17); |

| 04-09-2007 | Petitioner was arraigned on the EDTN charge, and he pled not guilty, (EDTN 3:07-CR-32, Doc. 7); |
|---|---|
| 02-26-2008 | An indictment was returned by the State of Tennessee, which charged Petitioner with two counts of first degree murder of Jean Johnson (counts one and two), aggravated kidnapping of Jean Johnson (count three), and theft of Jean Johnson's Ford van (count four)—case no. 8926, (Docs. 1 at 9-11; 9-1 at 3; 9-8); |
| 07-16-2008 | A superseding indictment was returned in EDTN, charging Petitioner with being a felon in possession of a firearm (count one), and with possessing an unregistered Sten machine gun, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 (count two), (EDTN 3:07-CR-32, Doc. 54; *see also* Docs. 9-8 at 3; 9-10); |
| 07-30-2008 | Petitioner was arraigned on the EDTN superseding charges, and he pled not guilty, (EDTN 3:07-CR-32, Doc. 59); |
| 10-27-2008 | A one-day trial was held in EDTN, and the jury found Petitioner guilty on both counts, (EDTN 3:07-CR-32, Docs. 71, 73; *see also* Doc. 9-13); |
| 03-11-2009 | Petitioner was sentenced in EDTN to 300 months of imprisonment on count one, and 120 months on count two, to run concurrently to each other, for a total term of 300 months (25 years), and Petitioner was remanded to the custody of the U.S. Marshal, (EDTN 3:07-CR-32, Docs. 80, 81 (judgment entered on 03-25-2009); *see also* Doc. 9-1 at 3, 17, 20-24); |
| 04-10-2009 | The U.S. Marshal returned Petitioner to the Scott County Jail and SCSD custody, and the EDTN judgment was filed as a detainer, (EDTN 3:07-CR-32, Docs. 85 at 2, 138 at 1; *see also* Doc. 9-1 at 4, 15, 17, 29, 32-33, 57-58); |
| 05-17-2010 | Petitioner pled guilty in the Criminal Circuit Court of Scott County, Tennessee, to second degree murder in case no. 8926, and his probation in case no. 8338 was revoked; Petitioner was sentenced to 15 years of imprisonment in case no. 8926, which was ordered to run concurrently to his probation revocation sentence in case no. 8338, and to his 25-year federal sentence imposed in EDTN 3:07-CR-32 on 03-11-2009; and Petitioner received prior custody credit from 03-18-2007 through 05-17-2010, which was applied to his 15-year state sentence, (Docs. 1 at 9; 9-1 at 4-5, 26, 28-30; 9-7 at 1-2); |

3

| 07-15-2010 | Petitioner was transferred from SCSD custody to the Tennessee Department of Corrections (TDOC) to serve his 15-year state sentence for second degree murder, (Doc. 9-1 at 4, 15); |
|---|---|
| 12-17-2019 | Petitioner completed his 15-year state sentence, and he was transferred from TDOC custody to the custody of the U.S. Marshal for designation to a Bureau of Prisons (BOP) facility, (Doc. 9-1 at 4-5, 17-18, 32-34); |
| 12-17-2019 | The commencement date for Petitioner's 25-year federal sentence, to which BOP applied prior custody credit from 03-09-2007 through 03-17-2007 because that time in state custody had not been applied to his state sentence, (Doc. 9-1 at 5-6, 12); |
| 03-28-2041 | Petitioner's projected federal sentence release date, presuming that he receives all available good time credit, (Doc. 9-1 at 2, 10-12). |

On November 27, 2020, Petitioner filed the pending § 2241 motion, challenging the calculation and execution of his federal sentence by Defendant (BOP).[1] (Doc. 1.) Petitioner argues that because the Tennessee state court judge who imposed his 15-year sentence for second degree murder ordered that sentence to run concurrently with his 25-year federal sentence, Defendant should "recalibrate" the calculation of his federal sentence by applying an additional credit of 12 years and eight months for the period of 04-17-2007 to 12-17-2019. (Doc. 1.) On January 27, 2022, the Honorable Alan J. Baverman, Magistrate Judge

---

[1] The proper party respondent to a § 2241 habeas corpus petition is the custodian of the prisoner—*i.e.*, the Warden of the facility where Petitioner is housed. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement"); *Walther v. Bauknecht*, 155 F. App'x 463, 464 (11th Cir. 2005). Here, Petitioner was housed at USP Atlanta when he filed his petition, and the Court previously found that it retains jurisdiction despite Petitioner now being incarcerated in North Carolina. (Doc. 21 at 1 n.1.)

4

(retired), issued a Report and Recommendation (R&R) that recommended denying Petitioner's § 2241 motion for the following reasons:

(1) The federal sentencing judge did not expressly state that Petitioner's federal sentence should run concurrently with any state sentence, so by statute, it automatically runs consecutively, (Doc. 12 at 4-5) (citing 18 U.S.C. § 3584(a));

(2) Under 18 U.S.C. § 3585(b), federal sentence credit for time credited to a state sentence is prohibited, and Petitioner already received credit for all of the time he spent in custody prior to the commencement date of his federal sentence, (Doc. 12 at 5);

(3) Petitioner is not entitled to federal sentence credit for the period of 04-05-2007 to 04-10-2009, which is the period of time that Petitioner was "loan[ed]" to the U.S. Marshal's custody to appear for his EDTN case, because when the federal government takes possession of a state prisoner pursuant to a writ of habeas corpus *ad prosequendum*, the state's custody is not interrupted, (Doc. 12 at 5-6) (citing *Butler v. Warden, FCC Coleman-Medium*, 451 F. App'x 811, 812 (11th Cir. Nov. 28, 2011) (per curiam)); and

(4) A state sentencing court, which here imposed its sentence after the federal sentence was imposed, cannot bind a federal sentence to run concurrently with a state sentence; thus, the terms of Petitioner's 15-year state sentence do not affect his 25-year federal sentence, (Doc. 12 at 6-7) (citing *Fitch v. Vaughn*, 67 F.3d 909, 915 (11th Cir. 1995) and *United States v. Ballard*, 6 F.3d 1502, 1509 (11th Cir. 1993)).

The District Judge, the Honorable Michael L. Brown, initially adopted the R&R on March 18, 2022, denying Petitioner's motion, and terminating the case. (Doc. 15.) But a few months later, on May 25, 2022, Judge Brown vacated his prior order denying the § 2241 motion, and re-opened the case. (Doc. 21.) Judge Brown found that Petitioner had shown good cause for failing to timely file his objections to the R&R—namely, during the relevant period, BOP had moved Petitioner twice, and for each transfer, Petitioner was held in quarantine for a period of time, so he did not receive a copy of the R&R until several weeks after it was filed. (Doc. 21 at 2.) Judge Brown, therefore, re-evaluated the R&R in light of Petitioner's late-filed objections. (*Id.*) Upon re-evaluation, Judge Brown found that "it is clear that BOP did not abuse its discretion" by concluding, after seeking guidance from the EDTN federal sentencing court, that Petitioner was not entitled to a *nunc pro tunc* designation under 18 U.S.C. § 3621(b), which would have had the effect of commencing his federal sentence while he was still in state custody. (Doc. 21 at 5-6); *see also* (Doc. 9-1 at 57-58; EDTN 3:07-CR-32, Doc. 138) (letter from BOP to EDTN (District Judge Varlan) for guidance about Petitioner's request that his 25-year federal sentence be served concurrently with his 15-year state sentence). Judge Brown found, however, that an opinion from a district judge in Oregon—*Cozine v. Crabtree*, 15 F. Supp. 2d 997 (D. Or. 1998)—"raises different concerns." (Doc. 21 at 7.) As Judge Brown explained, the *Cozine* Court held that when a criminal defendant is first sentenced in federal court, and a state court later imposes a sentence and orders it to run concurrently to the federal sentence, the doctrines of dual sovereignty and comity prohibit BOP from

6

mandating that the sentences run consecutively because, according to the *Cozine* Court, "the federal government 'had no right to tell [the state] how much, or how little, punishment it should exact from [the defendant] in accordance with its laws.'" (Doc. 21 at 7) (citing *Cozine*, 15 F. Supp. 2d at 1010-11). Judge Brown "question[ed]" the federal government's authority here to "renege" because it "could well be" that Petitioner's guilty plea in the state action was based on a "likelihood (or promise)" that Petitioner would receive a concurrent sentence, meaning that he would not serve any additional time in prison for the murder conviction. (Doc. 21 at 7.) Judge Brown was also concerned about the "arbitrariness of Petitioner's situation," given that if the Tennessee authorities had turned Petitioner over to the federal government immediately after his guilty plea for murder in state court, then Petitioner never would have served 15 years in state prison,[2] and "manipulating the order of the location in which the

---

[2] Judge Brown noted that he had not determined exactly how much time Petitioner served of his state sentence, and it was likely something less than 15 years. (Doc. 21 at 8 n.3.) Petitioner served about 12 years and nine months in state custody—from 03-08-2007, the date of his arrest on criminal trespass charges, to 12-17-2019, the date he completed his sentence for second degree murder and was transferred to federal custody to begin his federal sentence. (Docs. 9-1 at 3-5, 17-18, 32-34, 9-5, 9-6.) As discussed above, the period of 04-05-2007 to 04-10-2009, which is when Petitioner was "loan[ed]" to the U.S. Marshal's custody to appear for his EDTN case pursuant to a writ of habeas corpus *ad prosequendum*, did not interrupt the state's custody, (Doc. 12 at 5-6), and the period of 03-18-2007 to 05-17-2010, which included that "loan" period, was credited to his state sentence. (Docs. 1 at 9, 9-1 at 28-29, 9-7 at 2.) Petitioner pled guilty in state court on 05-17-2010, (Doc. 1 at 9); thus, had he been turned over to federal authorities to start his federal sentence then, he would have served only about three years and two months in state custody.

sentences are served should not enable BOP officials to override decisions of state sentencing courts." (Doc. 21 at 7-8.) Judge Brown stated, however, that because Defendant had not yet addressed the issue, he did "not yet agree or disagree with the court in *Cozine*." (*Id.* at 9.) Judge Brown referred the matter to the undersigned to appoint counsel for Petitioner, and for "further proceedings as appropriate." (*Id.*) On June 24, 2022, the undersigned appointed counsel for Petitioner, and issued a briefing schedule. (Docs. 22; 23.) Petitioner, through counsel, filed his initial brief on November 7, 2022, (Doc. 28); Defendant filed a response on January 19, 2023, (Doc. 31); and Petitioner filed a reply on February 27, 2023, (Doc. 35.) Petitioner also later filed the pending motion for an evidentiary hearing. (Doc. 36.)

## II.     DISCUSSION

### A.     28 U.S.C. § 2241 Motion

In his initial brief, Petitioner states that "BOP is refusing to honor Tennessee's bargained for promise to run their sentence concurrent to Petitioner's federal sentence," and that he "relies upon and adopts the rationale" of *Cozine*, which "offers a persuasive rationale" supporting Petitioner's claim that BOP must apply credit to his federal sentence for the entire time that Petitioner served in Tennessee state custody. (Doc. 28 at 1-3.) Petitioner then spends the remaining five pages of his eight-page initial brief, as well as a portion of his reply, arguing that BOP did not properly exercise its discretion when it

determined that retroactive designation under 18 U.S.C. § 3621(b)[3] was not appropriate. (Docs. 28 at 3-7; 35 at 4-6, 8.) Defendant responds that Petitioner is not entitled to relief based on *Cozine* because *Cozine* applied Ninth Circuit precedent that was subsequently abrogated in relevant part by the Supreme Court in *Setser v. United States*, 566 U.S. 231 (2011); *Cozine* is also inconsistent with Eleventh Circuit precedent; and in any event, even if it was good law, the facts of *Cozine* are distinguishable. (Doc. 31 at 4-9, 13-15.) Defendant also argues that it properly acted within its discretion under 18 U.S.C. § 3621(b). (Doc. 31 at 9-13, 17-20.) In reply, Petitioner states that Defendant's reliance on *Setser* "is misplaced" because Petitioner is not arguing that a state may dictate how the federal government carries out a criminal sentence, but that to the extent *Setser* does apply, the Court should consider whether Defendant took into account the unfairness to Petitioner. (Doc. 35 at 7) (citing the portion of *Setser* that discusses 18 U.S.C. § 3582(c)(1)(A) as "a mechanism for relief" when the court fails to anticipate developments that occur after the first sentencing that "produces unfairness to the defendant").

---

[3] Section 3621(b) provides that "[t]he BOP shall designate the place of a prisoner's imprisonment," and includes factors the BOP should consider when making that designation. Section 3621(b) further provides that the "Bureau may designate any correctional facility," which includes state facilities. The Third Circuit in *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990), recognized BOP's discretion under Section 3621(b) to designate a state prison to be the place of a prisoner's imprisonment, and found that the statute "granted the BOP the discretion to retroactively designate a state facility as the place for service of a federal sentence." (Doc. 21 at 5-6) (citing *Barden*, 921 F.2d at 481).

9

As an initial point, the undersigned notes that it may not re-decide or review an issue that Judge Brown has already decided—namely that, "it is clear that BOP did not abuse its discretion" by concluding, after seeking guidance from the EDTN federal sentencing court, that Petitioner was not entitled to a *nunc pro tunc* designation under 18 U.S.C. § 3621(b). (Doc. 21 at 5-6.) Turning to the question actually at issue, the undersigned finds that Petitioner is not entitled to relief under § 2241.

To begin, *Setser v. United States*, 566 U.S. 231, 235-244 (2011) — which was decided approximately 14 years after *Cozine* — holds that a federal district court has the authority to order a federal sentence to run consecutively to a state sentence, *even when the state sentence is not yet imposed*. This holding is consistent with prior and subsequent Eleventh Circuit authority. *See United States v. Howard*, 516 F. App'x 885, 890 (11th Cir. 2013) ("[t]he Supreme Court recently concluded, consistent with this Circuit's longstanding precedent, that the district court 'has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed'") (citing *Setser*, 132 S. Ct. at 1466)); *United States v. Andrews*, 330 F.3d 1305, 1307 (11th Cir. 2003) (recognizing that under binding authority, "a court does have the authority to impose a consecutive sentence to an unimposed, future sentence"); *United States v. Ballard*, 6 F.3d 1502, 1509 (11th Cir. 1993) (holding that a district court is authorized to disregard a state sentence that attempts to bind the federal sentencing court, and need not concern itself about a state sentence not yet imposed). Here, the district judge knew that Defendant's state case no. 8926 charging him with murder was

pending when the judge sentenced Defendant to 300 months' imprisonment. Under *Setser*, the district judge could have ordered the federal sentence to run concurrent to the yet-to-be-imposed state sentence, but the federal judge declined to do so.

Next, the Eleventh Circuit holds that a defendant's agreement with state authorities cannot compel a federal judge to act a certain way. Similar to the case here, in *Hawley*, the petitioner was sentenced by a state court that intended its sentence to run concurrently with petitioner's federal sentence, and petitioner argued that "his consecutive federal sentence is unlawful because it denied the State of Georgia the right to impose a concurrent sentence." *Hawley v. United States*, 898 F.2d 1513, 1514 (11th Cir. 1990). The Eleventh Circuit rejected petitioner's argument. *Id.* "Because of the division of powers between the federal government and the states under the dual sovereignty principle of our form of government, a defendant may not, by agreement with state authorities, compel the federal government to impose a sentence that is concurrent with [his] state sentence." *Id.* (citing *United States v. Sackinger*, 704 F.2d 29, 32 (2d Cir. 1983)); *see also Finch v. Vaughn*, 67 F.3d 909, 915 (11th Cir. 1995) ("[w]e specifically have held that a federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the federal sentence") (citing *United States v. Adair*, 826 F.2d 1040, 1041 (11th Cir.1987) (per curiam)). Given that the BOP sought guidance from the EDTN federal sentencing court, and the EDTN court "did not order, recommend, or otherwise indicate that the federal term is to operate concurrently with the state

11

term," (Doc. 21 at 6), there is no error in BOP's execution of Petitioner's federal sentence, which it has calculated in accordance with federal law, as commencing on 12-17-2019, the date that Petitioner was received into federal custody. (Doc. 9-1 at 12, 17-18, 32-34); *see also* 18 U.S.C. § 3585(a) ("[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served").

Also, unlike the facts in *Cozine*, there is no indication here that Tennessee state authorities attempted to deliver Petitioner into federal custody at some point, but Defendant refused to accept him, or that Defendant otherwise manipulated the order of locations in an attempt to override the state court's sentencing decision. (Doc. 21 at 7-8); *Cozine*, 15 F. Supp. 2d at 1008-10. The records show that Petitioner was in primary state custody for the entire period of 03-08-2007 through 12-17-2019. Petitioner was arrested by SCSD on 03-08-2007 on a criminal trespass charge in case no. 30007, and a secure bond in the amount of $250,000 for that charge was set at an initial appearance on 03-14-2007, but apparently Petitioner did not pay the bond because he was still in custody on 03-21-2007, which is the date that the first EDTN indictment was returned, a hold was placed by the U.S. Department of Justice ATF, and the criminal trespass charge was dismissed without prejudice on the state's motion. (Docs. 9-1 at 14; 9-5 at 1-2, 4; 9-6 at 1; 9-9; EDTN 3:07-CR-32, Doc. 2.) It is noted on the arrest warrant for case no. 30007 that "Defendant [is] on probation," and on 03-26-2007,

12

Petitioner was booked by SCSD for violating his probation in case no. 8338. (Docs. 9-1 at 14; 9-6 at 1.) Also on 03-26-2007, a writ of habeas corpus *ad prosequendum* was issued by EDTN to the Scott County Sheriff, for Petitioner's initial appearance in EDTN on 04-09-2007. (Docs. 9-11; 9-12; EDTN 3:07-CR-32, Doc. 4.) A Deputy U.S. Marshal executed the warrant for Petitioner's arrest on the EDTN charge at the Scott County Jail, (EDTN 3:07-CR-32, Doc. 12), and Petitioner was released to the custody of the U.S. Marshal pursuant to the writ of habeas corpus *ad prosequendum* on 04-05-2007. (Doc. 9-1 at 14, 17.) The SCSD intake and release records show that for the entire period of 03-08-2007 through 04-05-2007, the "Agency Responsible" was "SCSD–Scott County Sheriff's Department."[4] (Docs. 9-1 at 14; 9-6 at 1.)

---

[4] Unlike a writ of habeas corpus *ad prosequendum*, which is issued by a federal district court, a hold or detainer may be lodged against a prisoner by a prosecutor or law enforcement officer—as it was here by ATF—and it does not require the immediate presence of the prisoner, it merely puts the officials of the institution where the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction upon his release for trial or other proceedings. *See United States v. Mauro*, 436 U.S. 340, 358–59 (1978); *see also Carchman v. Nash*, 473 U.S. 716, 719 (1985) ("A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent"). Detainers are generally based on outstanding criminal charges, outstanding parole or probation-violation charges, or additional sentences already imposed. *Carchman*, 473 U.S. at 719. Further action must be taken by the receiving entity in order to obtain the prisoner. *Mauro*, 436 U.S. at 358. Thus, the ATF hold here did not constitute "federal custody" of Petitioner. *Id.* It appears that Petitioner was in SCSD custody between 03-21-27 and 03-26-27 based on his pending probation violation, as well as the ATF hold. That is, the records show that Petitioner was booked by SCSD for the probation violation on 03-26-27, (Docs. 9-1 at 14; 9-6 at 1), but the order revoking

13

Petitioner was sentenced in EDTN federal court on 03-11-2009. (EDTN 3:07-CR-32, Docs. 80, 81). But Petitioner's state murder and kidnapping charges were pending at that time, so on 04-10-2009, the U.S. Marshal returned Petitioner to SCSD custody pursuant to the writ of habeas corpus *ad prosequendum*, and the EDTN judgment was filed as a detainer. (Doc. 9-1 at 15, 17; EDTN 3:07-CR-32, Doc. 85 at 2.) The SCSD record shows an intake date of 04-10-2009, a detainer by the "U.S. Marshalls (sic) 300 Months," and also again shows that the "Agency Responsible" was "SCSD–Scott County Sheriff's Department." (Doc. 9-1 at 15); *see also Butler v. Warden, FCC Coleman-Medium*, 451 F. App'x 811, 812 (11th Cir. 2011) ("when the federal government takes possession of a state prisoner pursuant to a writ of habeas corpus *ad prosequendum*, the state's custody is not interrupted, and thus the prisoner's federal sentence does not begin to run until he is turned over to federal authorities after having served his state sentence").

Over one year later, on May 17, 2010, Petitioner pled guilty to second degree murder in the Criminal Circuit Court of Scott County, Tennessee, and he was sentenced to 15 years of imprisonment. (Docs. 1 at 9; 9-1 at 4-5, 26, 28-30; 9-7 at 1-2.) It was within the state's authority to transfer Petitioner to federal custody at that point, after his state court plea and sentencing on May 17, 2010, in order to

---

Petitioner's probation states that "the Court heard the petition to revoke" in case no. 8338. (Doc. 9-7 at 1-2). There is no copy of the petition included in the records, so it is unknown when the petition to revoke probation was actually filed. Regardless, it does not change the outcome. And as discussed, Petitioner received credit against his state sentence for the time including 03-21-27 to 03-26-27. (Docs. 9-1 at 28-30; 9-7 at 1-2.)

14

effectuate the state court's sentencing order, but instead, they transferred Petitioner to TDOC to serve his state sentence. (Doc. 9-1 at 15). Even assuming that it was error on the part of the state authorities to transfer Petitioner to TDOC instead of into federal custody, the error was not due to any manipulation by Defendant. (Doc. 21 at 7-8.) But notably, even if the state authorities had attempted to deliver Petitioner into federal custody, and Defendant refused to accept him, which the records do not show, under this Circuit's precedent, it would not be error. *Meagher v. Clark*, 943 F.2d 1277, 1281 (11th Cir. 1991) (explaining that under this Circuit's precedent, "[u]nless the United States has somehow induced a state guilty plea by making a representation as to concurrency . . ., a parole violator has no right to serve his sentences concurrently and may not protest when the federal government will not take him into custody until his intervening state sentence is served") (citing *Saulsbury v. United States*, 591 F.2d 1028, 1035 (5th Cir. 1979)).[5]

The core problem here, and what appears to be at the heart of Judge Brown's fairness concerns, is the possibility that Petitioner's state guilty plea to second degree murder, which occurred one year after his federal sentence had been imposed, was induced by a promise of a certain sentence from state prosecutors—*i.e.*, that his state murder sentence and his 25-year federal firearm sentence would run concurrently, meaning in effect, that he would likely serve

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit that were issued before October 1, 1981.

25 years or less for both cases, and nothing more. There is nothing in the current record establishing that fact, and just as it is possible that Petitioner was promised a concurrent sentence as a plea benefit, it is just as possible that he was not, and that the concurrent sentence was simply a decision the state court judge made at the time of sentencing. The record shows that Petitioner was indicted on two counts of first degree murder, one count of aggravated kidnapping, and one count of theft. (Doc. 1 at 10-11.) Thus, Petitioner received a plea benefit by being allowed to plead to one count of a lesser offense—second degree murder—and avoid trial on the four counts in the indictment. (Doc. 1 at 9.) But even assuming that Petitioner was also promised a concurrent sentence as part of his state plea bargain, which he has not received, § 2241 is not the proper vehicle to attack the validity of his state guilty plea. Petitioner states that Defendant "is refusing to honor Tennessee's bargained for promise to run their sentence concurrent to Petitioner's federal sentence," (Doc. 28 at 1-3), but Defendant was not a party to Petitioner's state plea agreement, and is not bound by it; thus, this Court cannot order Defendant to comply with its terms. *See Finch v. Vaughn*, 67 F.3d 909, 915 (11th Cir. 1995) (holding that a federal court "is not bound by a state plea bargain unless the federal government directly or indirectly was involved in the state plea bargaining process") (citing *Pinaud v. James*, 851 F.2d 27, 30 (2d Cir.1988) ("when federal officials are not parties to the state plea bargain, the federal court is not obligated to comply with the terms of the plea agreement entered into by the defendant and the state") (internal quotes omitted)); *Meagher*, 943 F.2d at 1281-82 (holding that state plea agreement for concurrency of petitioner's federal

and state sentences is not binding on federal government because dual sovereignty prevents state courts from providing defendants with federal relief without the federal government's consent); *Saulsbury*, 591 F.2d at 1035 ("Unless the United States has somehow induced a state guilty plea by making a representation as to concurrency . . . a [petitioner] has no right to serve his sentences concurrently"); *see also United States v. Sells*, 477 F.3d 1226, 1234 (10th Cir. 2007) (holding that "the federal government is not bound by provisions of a state plea agreement or the representations of a state prosecutor unless it was a party to the state proceedings").

Given that this Court does not have authority to order Defendant to comply with a state plea bargain to which Defendant was not a party, and given that Petitioner has already served his state sentence, his recourse at this point, assuming that he was in fact promised a concurrent sentence as a term of his plea bargain, appears to be a motion directed to the federal sentencing court under 18 U.S.C. § 3582(c)(1), as discussed in *Setser*. That is, in *Setser*, the Supreme Court explained that when a district court's "failure to anticipate developments that take place after the first sentencing produces unfairness to the defendant, the [Sentencing Reform] Act provides a mechanism for relief." *Setser*, 566 U.S. at 242–43 (internal quotes and cites omitted). Namely, § 3582(c)(1)(A) provides that a district court may modify a term of imprisonment once it has been imposed if "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction [or that the defendant meets other criteria for relief]."

17

*Setser*, 566 U.S. at 243; 18 U.S.C. § 3582(c)(1)(A). In any event, Petitioner is not entitled to relief under § 2241, and accordingly, the undersigned **RECOMMENDS** that his § 2241 motion, (Doc. 1), be **DENIED**.

### B. Evidentiary Hearing

Petitioner filed a motion seeking an evidentiary hearing because "[t]he ability to issue a subpoena would be useful," in order "to determine what agency or entity held [Petitioner] from March 9 to 17, 2007." (Doc 36.) As discussed at length above, the records establishing which agency had custody of Petitioner for those dates are already before the Court. (Docs. 9-1; 9-4; 9-5; 9-6; 9-8; 9-9; 9-14). Thus, an evidentiary hearing is not necessary, and Petitioner's motion, (Doc. 36), is **DENIED**.

### III. CONCLUSION

For the above reasons, the Court **DENIES** Petitioner's motion for an evidentiary hearing, (Doc. 36), and the Court **RECOMMENDS** that Petitioner's § 2241 motion challenging the execution and calculation of his federal sentence, (Doc. 1), be **DENIED**.

This is a Final Report and Recommendation, there is nothing further pending in this action, and the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned Magistrate Judge.

**SO ORDERED, RECOMMENDED** and **DIRECTED** October 16, 2023.

J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE